UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David Slaughter,

    Plaintiff,

v.

Officers Josh Lawrenz and
Tony Kjorstad,

    Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 16-cv-1234 (MJD/SER)

_____

    Jennie M. Brown, Counsel for Plaintiff.

    Jon K. Iverson and Nathan C. Midolo, Iverson Reuvers Condon, Counsel for Defendants.

_____

This matter is before the Court on Defendants' motion for summary judgment.

**I.    Background**

On June 1, 2010, Plaintiff David Slaughter went to Lions Park in Chaska, Minnesota with his three year old grand-nephew. (Midolo Aff., Ex. 1 (Plaintiff Dep. 39).) A few months beforehand, Plaintiff had undergone surgery for peripheral artery disease and he was still in a lot of pain. (Id. 34.) He took his

1

bike to the park, but because of the surgery, he could not pedal the bike and instead just coasted on the bike to the park. (Id. 41.) He also brought along his dog, unleashed. (Id. 44.)

After they were at the park for approximately five minutes, his nephew, the father of his grand-nephew, arrived at the park on another of Plaintiff's bikes. (Id. 42.) Plaintiff claims that his nephew was looking for him because he wanted money. (Id.) Thereafter, Plaintiff and his nephew got into a loud argument at the park. (Id.) Plaintiff asserts that other people in the park told them to be quiet, to which Plaintiff politely told them to not get involved. (Id.) His nephew then grabbed the child, and a group of men in the park approached Plaintiff, and were yelling at him. (Id.) At that time, Plaintiff claims he feared for his life and as the group approached him, he backed up to his bike and grabbed a miniature bat that was strapped to the bike. (Id. 45.) He believes at this time he also called 911 because he was concerned about his nephew taking away his grand-nephew. (Id. 52.)

At his deposition, Plaintiff testified that when he fell back to his bike, he debated whether to grab his cane or the bat. Although the bat was shorter, he believed he could get a "couple of licks in before it broke . . . but I was counting

2

on the baseball bat to do damage, because I was afraid for my life." (Id. 48.) Deciding that the "best defense is a good offense" Plaintiff rushed the group with the bat raised in the air "with all the energy he had." (Id. 46.) Plaintiff admitted that he intended to "clock" one of them, but at the last second the man picked up a child and used the child as a shield. (Id.) Thereafter, the group backed away. (Id. 49.)

Because of his injuries from surgery, Plaintiff could not go after his nephew so he decided to leave the park to protect himself. (Id. 50.) He gathered up his bikes and was pushing them home when at some point he fell on the ground. (Id. 56.) Shortly thereafter, he was approached by Officers Josh Lawrenz and Tony Kjorstad. (Id.)

At his deposition, Lawrenz testified that he received a call from dispatch, informing him of an uncooperative caller reporting a possible kidnaping. (Midolo Aff., Ex. 3 (Lawrenz Dep. 5). Dispatch received a second call from a different person reporting an altercation at Lions Park. (Id. 5-6.) When he arrived at the park, Lawrenz saw some people he knew, who were flagging him down. (Id. 6.) After speaking with these people, both Lawrenz and Kjorstad went to speak with Plaintiff. (Id. 7.)

Plaintiff claims that he approached the officers because of his concern for the welfare of his grand-nephew. (Id. Ex. 1 (Plaintiff Dep. 60).) The officers, on the other hand, assert that they approached Plaintiff while he was sitting on the ground, after he fell off his bike. (Midolo Aff., Ex. 3 (Lawrenz Dep. 7).).

Lawrenz testified that he told Plaintiff that they had received a complaint that Plaintiff was threatening the group with a baseball bat. (Id. Ex. 3 (Lawrenz Dep. 8).) Lawrenz then advised him he would need to have him stand up so he could conduct a pat down search for weapons. (Id.) While Plaintiff initially followed the officers' directions and appeared as if he would comply, when Lawrenz touched his wrists, Plaintiff resisted and told him to "get his f'in hands off of me." (Id. 9; Ex. 4 (Kjorstad Dep. 11).)

Plaintiff testified that he resisted the search because he did not feel the officers had a reason to search him and because he was the one who called 911. (Id. Ex. 1 (Plaintiff Dep. 60).) Plaintiff further admitted that the officers may have said something to him before they tried to search him, but because the Plaintiff was talking to them, he wasn't listening to what the officers said. (Id. 64.)

When Plaintiff pulled away from Lawrenz, the officers did a takedown maneuver on Plaintiff. (Id. 65.) Plaintiff claims he fell down onto a tree stump,

and that the officers proceeded to kick him and step on him. (Id. 69.) He also claims they smashed his head into the ground and hurt his arms when they put the cuffs on him. (Id.) Plaintiff tried to tell the officers he was in a lot of pain, to stop kicking and hitting him, but they just laughed at him. (Id.) Plaintiff admits that he resisted the officers' attempts to place him in handcuffs. (Id. 71.)

After about five minutes, Plaintiff finally allowed the officers to handcuff him and they picked him up off the ground and threw him into the squad car and taken to jail. (Id. 74.) Once there, the handcuffs were removed and he was "thrown" into a cell and fell on the floor. (Id. 82.) One of the jailors then bent Plaintiff's fingers and arms, and put him in a chokehold, and when he asked why they were doing that, the three or four jailors in the cell began to laugh at him. (Id. 82-84.) Only when he complained of chest pain did they leave him alone to call an ambulance. (Id.) Plaintiff had no further contact with Officers Lawrenz and Kjorstad once in jail.

Plaintiff was ultimately charged with a number of crimes, including disorderly conduct, obstruction of legal process and assault. (Midolo Aff., Ex. 5.) Eventually, Plaintiff entered an *Alford* plea to the disorderly conduct charge that arose as a result of his actions on June 1, 2010. (Id. Ex. 6 (Plea Transcript 19-22).)

In the Second Amended Complaint, Plaintiff alleges Officers Lawrenz and Kjorstad used excessive force against him in violation of his Fourth and Fourteenth Amendment rights and that they committed an assault when they threw him on the ground at Lions Park.

## II. Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)). The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## III. Qualified Immunity

When bringing a Section 1983 claim a plaintiff must establish (1) a deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982). A government official that is sued under Section 1983 in his/her individual capacity may raise the defense of qualified immunity. Sisney v. Reisch, 674 F.3d 839, 844 (8th Cir. 2012). Defendants argue they are entitled to qualified immunity against any claim brought under 42 U.S.C. § 1983.

"Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citations omitted). "The purpose of qualified immunity is to allow public officers to carry out their duties as they believe are correct and consistent with good public policy, rather than acting out of fear for their own personal financial well being." Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002) (citation omitted).

"To determine whether a right is clearly established we ask whether it

would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (quoting Clemmons v. Armontrout, 477 F.3d 962, 965 (8th Cir. 2007)). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Wilson v. Layne, 526 U.S. 603, 614 (1999). Further, "the clearly established law must be 'particularized' to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017).

### A. Constitutional Violation

Defendants argue that in his deposition, Plaintiff clarified that his excessive force claim stems from them 1) bringing him to the ground using a leg maneuver 2) putting their legs on his back 3) pushing his head into the ground 4) pulling his arms backwards when trying to place him in handcuffs and 5) placing handcuffs on him. (Midolo Aff., Ex. 1 (Plaintiff Dep 70).) Viewing the facts in favor of Plaintiff, the Court finds these actions do not rise to the level of excessive force.

> When the claim is one of excessive force,
>
> factors relevant to assessing the objective reasonableness of force used by officers include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort

made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Ryan v. Armstrong, 850 F.3d 419, 427 (8th Cir. 2017) (quoting Kingsley v. Hendrickson, __ U.S. __, 135 S. Ct. 2466, 2473 (2015)).

In addition, the issue of reasonableness should be examined from the perspective of the facts known to the officer at the time of the incident. Schultz v. Long, 44 F.3d 643, 648 (8th Cir. 1995). "If an officer reasonably, but mistakenly, believes that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." Saucier v. Katz, 533 U.S. 194, 205 (2001).

Finally, police officers are permitted and even expected to ensure the safety of the public and individuals pursuant to their community care-taking function. Winters v. Adams, 254 F.3d 758, 763 (8th Cir. 2001); Meehan v. Thompson, 763 F.3d 936, 941 (8th Cir. 2014). When exercising this function, an officer may seize a person if there is reason to believe the person is impaired, or presents a danger to themselves or others. Id.

Plaintiff claims there was no reason to use any force against him on the day in question because, despite the fact that he admittedly rushed at a group of

9

people in the park with an upraised baseball bat and that he intended to "clock" one of them, when the officers approached him he was calm. He also claims that the officers did not explain to him that they were going to conduct a pat down search before attempting to do so, so he pulled away and was immediately taken down to the ground.

Plaintiff concedes that he continued to resist the officers' attempts to put him in handcuffs, but that smashing his head into the ground, moving his arms back, kneeing his back and stomping on his legs was excessive.

Based on the undisputed facts that Plaintiff had previously threatened a group of people in the park with a baseball, and that Plaintiff initially resisted the officers' attempts to conduct a pat down search, the Court finds it was reasonable for the officers to use a leg sweep to take him to the ground. See Wertish v. Krieger, 433 F.3d 1062, 1067 (8th Cir. 2006); Ehlers v. City of Rapid City, 846 F.3d 1002, 1011 (8th Cir. 2017). And once on the ground, Plaintiff continued to physically resist and refused to allow the officers to put handcuffs on him, therefore the officers were justified in the continued use of force. See Schoettle v. Jefferson County, 788 F.3d 855, 858 (2015) (finding that use of pepper-spray and blows to the head and body of plaintiff were reasonable based on plaintiff's

active resistance to officers' attempts to handcuff him); Wertish, 433 F.3d at 1066 (finding that officer's use of force against plaintiff who was resisting arrest was reasonable).

The Supreme Court has held that there is no constitutional right to be informed of the reasons for an arrest or detention. Devenpeck v. Alford, 543 U.S. 146, 155 (2004). Thus, the proper inquiry is whether the officers were justified in conducting the brief frisk, not whether they informed Plaintiff prior to conducting the frisk. Here, it is undisputed that the officers were acting on the information that Plaintiff had tried to attack people with the baseball bat and that it was reasonable to conduct a brief frisk for weapons prior to talking with Plaintiff.

Because the Court finds that the force used against Plaintiff was not unconstitutionally excessive, Count I must be dismissed.[1]

---

[1] In the Second Amended Complaint, Plaintiff only alleges a claim of excessive force, yet in his opposition brief, he argues that the initial pat down and arrest were unconstitutional. Because these claims were not plead in the Complaint, he cannot assert them at this time. Northern States Power Co. v. Federal Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004) (finding that a party may not manufacture claims which were not pled, late into the litigation for the purpose of avoiding summary judgment). Nonetheless, based on the undisputed facts in this case, such claims have no merit. Plaintiff cannot demonstrate that a brief frisk for weapons was not reasonable when the officers had specific information that Plaintiff had threatened a group of people and tried to attack them with a baseball bat. These facts are sufficient to support a reasonable suspicion that Plaintiff was involved in criminal activity, and provided probable cause that Plaintiff had committed disorderly conduct and/or assault. The

## B. Clearly Established Constitutional Right

In the alternative, Defendants are entitled to qualified immunity as to Count I because it was not clearly established that the officers' conduct rose to the level of a constitutional violation.

For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ryan 850 F.3d at 427 (quoting White v. Pauly, 137 S. Ct. at 551). "In all cases, '[t]he dispositive question is whether the violative nature of particular conduct is clearly established ... in light of the specific context of the case.'" Id. (quoting Mullenix v. Luna,136 S.Ct. 305, 308 (2015)).

Again, the officers had specific information that Plaintiff had threatened a group and tried to attack them with a baseball bat. When they tried to conduct a pat down search, Plaintiff resisted and refused to comply with the officers' commands. Given these facts, there is no clearly established precedent indicating the officers' actions in using force against a resisting suspect was a constitutional violation. See e.g., Heitzman v. Englestad, Civ. No. 12-cv-2274, 2015 WL 506279, *6 (D. Minn. Feb. 6, 2015) (citing Blazek v. City of Iowa City, 761 F.3d 920, 923-25

---

officers also had a reasonable suspicion that Plaintiff may be armed with a bat or other weapon.

(8th Cir. 2014) (finding that defendant was entitled to qualified immunity where, after plaintiff refused to follow commands, officer spun plaintiff around multiple times, slammed her against a car hood, and pushed on plaintiff's neck and back with his arm to handcuff her). Plaintiff has failed to put forth any authority for his position that the officers were on notice that their conduct was clearly unlawful. Accordingly, the Court finds Defendants are entitled to qualified immunity.

### C. Monell Claim

Because Plaintiff has asserted that the officers acted in their official capacities, the complaint must be construed as raising a <u>Monell</u> claim that the officers acted in accordance with an unconstitutional custom, practice or policy of the City of Chaska. <u>McNeal v. Sherburne County</u>, 07-2494, 2008 WL 2224882, *2 (D. Minn. May 27, 2008) (a suit against a public employee in that person's official capacity is merely a suit against the public employer) (citing <u>Monell v. New York City Dept. of Social Serv.</u>, 436 U.S. 658, 690, n. 55 (1978)). Defendants argue that Plaintiff's <u>Monell</u> claim fails as a matter of law.

A municipality may be liable under § 1983 only if the government body itself subjects a person to a deprivation of rights or causes a person to be

subjected to such a deprivation.  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citing Monell v. New York City Dept. Of Soc. Servs., 436 U.S. 658, 692 (1978)).  To impose liability on a municipality, a plaintiff must prove that action or conduct pursuant to official municipal policy caused his/her injury.  Id.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Id.  Further, there can be no municipal liability absent an underlying and valid substantive claim against an individual.  McCoy v. City of Monticello, 411 F.3d 920 , 922 (8th Cir. 2005).

Because Plaintiff has failed to show that he was subjected to a deprivation of a constitutional right, this claim must be dismissed.

### D. State Law Claims

Plaintiff further alleges that Officers Lawrenz and Kjorstad committed the tort of assault.  Defendants argue that this claim is time barred.  Pursuant to Minnesota law, a common law tort claim must be brought within two years from the date of the incident.  Minn. Stat. § 541.07(1); Jenkins v. County of Hennepin, Minn., 06-3625, 2007 WL 2287840, *8 n.14 (D. Minn. Aug. 3, 2007).  Here, the incident took place on June 1, 2010, and this matter was not filed until May 2016.

Accordingly, the Court finds that Plaintiff's state law claim of assault must be dismissed as time barred.[2]

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 32] is **GRANTED**.  This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:   October 26, 2017

                                        s/ Michael J. Davis
                                        Michael J. Davis
                                        United States District Court

---

[2]Even if not time barred, the claim fails on its merits as Plaintiff cannot demonstrate that the officers used an unreasonable amount of force when attempting to place him in handcuffs.  See Johnson v. Paterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984).